## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SHANETTE WASHINGTON**, | ) | |
| | ) | |
| *Plaintiff*, | ) | **CIVIL ACTION NO**. |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **THE UNIVERSITY OF LOUISIANA** | ) | |
| **AT MONROE** | ) | |
| | ) | |
| *Defendant.* | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**NOW INTO COURT**, Plaintiff, Shanette Washington ("Plaintiff" or "Ms. Washington"), by and through undersigned counsel, hereby submits her Complaint against The University of Louisiana At Monroe ("Defendant" or "ULM").

## INTRODUCTION

1.

Plaintiff Shanette Washington, by and through her attorney, brings this action against ULM for violations of the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, violations of 42 U.S.C. § 2000e et seq., and violations of 42 U.S.C. § 1981 et seq. ("Title VII").

## JURISDICTION AND VENUE

2.

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and

1

pursuant to 28 U.S.C. § 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under (i) under any Act of Congress providing for the protection of civil rights; and (ii) Title VII. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.

Defendant is an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b).

4.

This court has personal jurisdiction over ULM. Defendant ULM is a public university doing business in Louisiana. At all times relevant, ULM operated its business within the State of Louisiana.

5.

Defendant operates its business within the Western District of Louisiana. All actions and inactions by Defendants alleged herein occurred within the Western District of Louisiana. Venue in this district is proper for the Defendant pursuant to 28 U.S.C. §1391(b) & (c).

**PARTIES**

6.

Plaintiff Shanette Washington is an African American female. At all relevant times, Plaintiff has been a resident of the State of Louisiana and met the definition of an "employee" under all applicable statutes.

7.

2

Upon information and belief, ULM is an accredited university engaged in providing undergraduate and graduate degrees. At all relevant times, ULM has met the definition of an "employer" under all applicable statutes.

## FACTS

8.

ULM is a state owned Unviersity that provides undergraduate and graduate degrees throughout Louisiana and employees over 500 individuals across the United States, including Louisiana.

9.

The Defendant, ULM, operates a branch of its company at 700 University Avenue, Monroe, Louisiana 71209.

10.

On or about 2003, Plaintiff began her employment with ULM as a Graphic Designer. On or about 2013, Plaintiff was promoted to Graphic Design Coordinator. Also in 2013, Plaintiff was employed with ULM as an Adjunct Professor for the ULM College of Business and Social Sciences.

11.

In support of her allegation of wage discrimination under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq., Ms. Washington further alleges:

12. Plaintiff is a member of a protected class, African American

13. ULM engaged in intentional wage discrimination in violation of the terms and conditions of Plaintiff's employment because she is African American. Had Plaintiff been a Caucasian employee, ULM would not have engaged in intentional wage discrimination

against Plaintiff.

14. On or about 2013, Plaintiff commenced employment with the Office of Marketing and Communications as a Graphic Design Coordinator. At the time of Plaintiff's hiring, there were only two other African American employees in the department: Terrance Armstard, a Photographer, and Kiwanna Sutton, a Staff Writer/Editor.

15. On or about 2014, Mr. Armstard was terminated and subsequently replaced by Ms. Emerald McIntyre, a Caucasian woman. The following year, on or about 2015, Ms. Sutton was terminated and replaced by Mr. Brice Jones, a Caucasian male.

16. With the termination and replacement of Mr. Armstard and Ms. Sutton by Caucasian employees, Plaintiff observed a pattern in the Marketing and Communications Department suggesting that African American employees did not retain their positions and were systematically replaced by Caucasian employees who received a higher rate of pay.

17. On or about 2015, new management, including a Director and a Creative Director, assumed leadership over Plaintiff's department, becoming Plaintiff's direct supervisors. Despite Plaintiff's twelve years of service with ULM, Plaintiff was neither considered for promotion nor consulted regarding departmental improvements.

18. On or about 2016, Plaintiff requested a promotion and salary increase. The Director of Marketing and Communications, Dr. Julia Letlow (Caucasian), denied this request, explaining that "we will never get more funding under this administration."

19. On or about 2020, Plaintiff renewed the request for a promotion and salary increase. Dr. Kelsey Bohl (Caucasian), then Director of Marketing and Communications, denied the request, indicating that a request for higher wages might prompt interim President Edwin

Litolff to "start moving people around."

20. On or about 2021, Plaintiff requested a salary increase and promotion. Plaintiff had been working with the same title for eight (8) years and wanted her career to reflect a positive progression. Creative Director Srdjan Marjanovic (Caucasian) declined to endorse Plaintiff for a raise or promotion.

21. Instead, Jeanette Robinson (Caucasian), a Social Media Specialist, was selected for a promotion and salary increase. Notably, Ms. Robinson lacked the qualifications and experience Plaintiff possessed. By that time, Plaintiff had served as a Graphic Design Coordinator for eight years and had approximately eighteen years of experience as a Graphic Designer, in addition to holding an MBA from Louisiana Tech and having completed coursework for a Master of Fine Arts from the Savannah College of Art and Design in 2008.

22. Despite ULM's repeated denial of Plaintiff's requests for promotions and raises, Plaintiff was continually assigned additional work and responsibilities without an increase in pay.

23. On or about May 8, 2023, Plaintiff was given only two choices, to resign or face termination. Plaintiff chose not to resign and was subsequently terminated by Vice President Lisa Miller (Caucasian), who informed Plaintiff that her services were no longer required as a Graphic Design Coordinator. Plaintiff was the last remaining African American employee in the Marketing and Communications Department.

24. On or about July 31, 2023, ULM posted a job opening for a Graphic Design Coordinator on Indeed, eventually hiring a Caucasian individual as Plaintiff's replacement. Since Plaintiff's assignment to the Marketing and Communications Department, all African American employees within the department have been terminated and replaced by

5

Caucasian employees who received a higher rate of pay.

25. Ms. Washington was subjected to wage discrimination. Ms. Washington alleges that, through discovery based on these allegations, Plaintiff will prove Defendant did in fact engage in intentional wage discrimination in violation of the terms and conditions of Plaintiff's employment under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq.

26.

In support of her allegation of wage discrimination under 42 U.S.C. § 1981, Ms. Washington further alleges:

27. Plaintiff is a member of a protected class, African American

28. ULM engaged in intentional wage discrimination in violation of the terms and conditions of Plaintiff's employment because she is African American. Had Plaintiff been a Caucasian employee, ULM would not have engaged in intentional wage discrimination against Plaintiff.

29. On or about 2013, Plaintiff commenced employment with the Office of Marketing and Communications as a Graphic Design Coordinator. At the time of Plaintiff's hiring, there were only two other African American employees in the department: Terrance Armstard, a Photographer, and Kiwanna Sutton, a Staff Writer/Editor.

30. On or about 2014, Mr. Armstard was terminated and subsequently replaced by Ms. Emerald McIntyre, a Caucasian woman. The following year, on or about 2015, Ms. Sutton was terminated and replaced by Mr. Brice Jones, a Caucasian male.

31. With the termination and replacement of Mr. Armstard and Ms. Sutton by Caucasian employees, Plaintiff observed a pattern in the Marketing and Communications

Department suggesting that African American employees did not retain their positions and were systematically replaced by Caucasian employees who received a higher rate of pay.

32. On or about 2015, new management, including a Director and a Creative Director, assumed leadership over Plaintiff's department, becoming Plaintiff's direct supervisors. Despite Plaintiff's twelve years of service with ULM, Plaintiff was neither considered for promotion nor consulted regarding departmental improvements.

33. On or about 2016, Plaintiff requested a promotion and salary increase. The Director of Marketing and Communications, Dr. Julia Letlow (Caucasian), denied this request, explaining that "we will never get more funding under this administration."

34. On or about 2020, Plaintiff renewed the request for a promotion and salary increase. Dr. Kelsey Bohl (Caucasian), then Director of Marketing and Communications, denied the request, indicating that a request for higher wages might prompt interim President Edwin Litolff to "start moving people around."

35. On or about 2021, Plaintiff requested for a salary increase and promotion. Plaintiff had been working with the same title for eight (8) years and wanted her career to reflect a positive progression. Creative Director Srdjan Marjanovic (Caucasian) declined to endorse Plaintiff for a raise or promotion.

36. Instead, Jeanette Robinson (Caucasian), a Social Media Specialist, was selected for a promotion and salary increase. Notably, Ms. Robinson lacked the qualifications and experience Plaintiff possessed. By that time, Plaintiff had served as a Graphic Design Coordinator for eight years and had approximately eighteen years of experience as a Graphic Designer, in addition to holding an MBA from Louisiana Tech and having

completed coursework for a Master of Fine Arts from the Savannah College of Art and Design in 2008.

37. Despite ULM's repeated denial of Plaintiff's requests for promotions and raises, Plaintiff was continually assigned additional work and responsibilities without an increase in pay.

38. On or about May 8, 2023, Plaintiff was given only two choices, to resign or face termination. Plaintiff chose not to resign and was subsequently terminated by Vice President Lisa Miller (Caucasian), who informed Plaintiff that her services were no longer required as a Graphic Design Coordinator. Plaintiff was the last remaining African American employee in the Marketing and Communications Department.

39. On or about July 31, 2023, ULM posted a job opening for a Graphic Design Coordinator on Indeed, eventually hiring a Caucasian individual as Plaintiff's replacement. Since Plaintiff's assignment to the Marketing and Communications Department, all African American employees within the department have been terminated and replaced by Caucasian employees who received a higher rate of pay.

40. Ms. Washington was subjected to wage discrimination. Ms. Washington alleges that, through discovery based on these allegations, Plaintiff will prove Defendant did in fact engage in intentional wage discrimination in violation of the terms and conditions of Plaintiff's employment under 42 U.S.C. § 1981.

41.

In support of her allegation of racial discrimination under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq., Ms. Washington further alleges:

42. Plaintiff is a member of a protected class, African American

43. ULM engaged in intentional racial discrimination in violation of the terms and conditions

of Plaintiff's employment because she is African American. Had Plaintiff been a

Caucasian employee, ULM would not have engaged in intentional racial discrimination

against Plaintiff.

44. On or about 2013, Plaintiff commenced employment with the Office of Marketing and

Communications as a Graphic Design Coordinator. At the time of Plaintiff's hiring, there

were only two other African American employees in the department: Terrance Armstard,

a Photographer, and Kiwanna Sutton, a Staff Writer/Editor.

45. On or about 2014, Mr. Armstard was terminated and subsequently replaced by Ms.

Emerald McIntyre, a Caucasian woman. The following year, on or about 2015, Ms.

Sutton was terminated and replaced by Mr. Brice Jones, a Caucasian male.

46. With the termination and replacement of Mr. Armstard and Ms. Sutton by Caucasian

employees, Plaintiff observed a pattern in the Marketing and Communications

Department suggesting that African American employees did not retain their positions

and were systematically replaced by Caucasian employees who received a higher rate of

pay.

47. On or about 2015, new management, including a Director and a Creative Director,

assumed leadership over Plaintiff's department, becoming Plaintiff's direct supervisors.

Despite Plaintiff's twelve years of service with ULM, Plaintiff was neither considered for

promotion nor consulted regarding departmental improvements.

48. Vice President Lisa Miller informed Plaintiff that newly acquired Creative Director

Srdjan Marjanovic has an abrasive personality and Plaintiff and other employees would

have to navigate around it.

49. Prior to Ms. Sutton's termination she had a disagreement with Director Marjanovic. Ms.

Sutton was terminated about two weeks later.

50. On or about 2016, Plaintiff requested a promotion and salary increase. The Director of Marketing and Communications, Dr. Julia Letlow (Caucasian), denied this request, explaining that "we will never get more funding under this administration."

51. On or about 2018, Plaintiff received a call from the Recruitment Department regarding follow-up on a project that Director Marjanovic was handling. Taking initiative, Plaintiff prepared materials to support Director Marjanovic's completion of the project. However, instead of appreciating Plaintiff's assistance, Director Marjanovic berated her for "interfering" with his work.

52. Plaintiff reported this incident to Director Letlow, who called in Director Marjanovic to discuss the matter. During the meeting, Director Marjanovic confirmed that Plaintiff had "interfered" with his work and did not deny making disparaging remarks. Despite his conduct, Director Marjanovic faced no disciplinary action. Instead, Plaintiff was instructed to stop answering phone calls for the Office of Marketing and Communications, despite this being part of her job responsibilities.

53. On or about December 12, 2018, Plaintiff requested a promotion and salary increase after approximately five years in the same position. She sought a title adjustment to accurately reflect her increased experience, as well as a salary more in line with the regional average. However, her request was denied.

54. On or about 2020, Plaintiff renewed the request for a promotion and salary increase. Dr. Kelsey Bohl (Caucasian), then Director of Marketing and Communications, denied the request, indicating that a request for higher wages might prompt interim President Edwin Litolff to "start moving people around."

55. On or about 2020, Plaintiff attended a Zoom meeting with department members. Due to a malfunctioning camera on her work-issued laptop, she had to join the meeting via her iPhone.

56. During the meeting, Director Marjanovic suddenly began yelling at Plaintiff, accusing her of making noises to annoy him. Confused, Plaintiff initially remained silent, unaware of who he was addressing. Eventually, she asked, "Who, me?" Director Marjanovic sarcastically replied, "No, my mother." Despite the presence of six other team members, Plaintiff, the only African American in the meeting, was singled out as the source of the alleged disruption. This incident left Plaintiff feeling humiliated, and Director Marjanovic faced no disciplinary action for his harassing remarks.

57. On or about 2021, Plaintiff requested for a salary increase and promotion. Plaintiff had been working with the same title for eight (8) years and wanted her career to reflect a positive progression. Creative Director Srdjan Marjanovic (Caucasian) declined to endorse Plaintiff for a raise or promotion.

58. Instead, Jeanette Robinson (Caucasian), a Social Media Specialist, was selected for a promotion and salary increase. Notably, Ms. Robinson lacked the qualifications and experience Plaintiff possessed. By that time, Plaintiff had served as a Graphic Design Coordinator for eight years and had approximately eighteen years of experience as a Graphic Designer, in addition to holding an MBA from Louisiana Tech and having completed coursework for a Master of Fine Arts from the Savannah College of Art and Design in 2008.

59. Despite ULM's repeated denial of Plaintiff's requests for promotions and raises, Plaintiff was continually assigned additional work and responsibilities without an increase in pay.

60. On or about April 2023, Plaintiff was tasked to create an email blast, with specific instructions from Director Marjanovic to include a clickable link for registration. Plaintiff edited the email so that users could click the link to access the required registration form.

61. The next day, Plaintiff was called into Director Marjanovic's office to discuss the assignment. During the meeting, Director Marjanovic harshly criticized her work, claiming it was not completed as he intended. Plaintiff tried to explain that she had followed his instructions to make the link clickable, but Director Marjanovic accused her of intentionally causing problems and showing disrespect. Each time Plaintiff attempted to clarify, Director Marjanovic raised his voice, at one point ordering her to "Stop talking!" Visibly emotional, Plaintiff explained that she respects him and had followed his instructions to the best of her ability.

62. On or about May 8, 2023, Plaintiff was given only two choices, to resign or face termination. Plaintiff chose not to resign and was subsequently terminated by Vice President Lisa Miller (Caucasian), who informed Plaintiff that her services were no longer required as a Graphic Design Coordinator. Plaintiff was the last remaining African American employee in the Marketing and Communications Department.

63. Since 2013, Plaintiff made multiple requests for a title change and salary increase, but none were granted. Her position as Graphic Design Coordinator remained classified as a junior-level role, even though she sought a title that would accurately reflect her 20 years of experience.

64. Each time, Plaintiff's requests were denied, with ULM citing the lack of a position that matched her qualifications. Nevertheless, ULM created new positions for Caucasian employees, including the roles of Creative Director and Digital Media Manager. Upon

12

information and belief, both Creative Director Marjanovic and Ms. Robinson received

raises, despite Plaintiff previously being informed that budget constraints would prevent

any salary increases for employees.

65. Plaintiff was an employee for ULM for eighteen (18) years with only two (2) more years

left before she qualified for retirement. Plaintiff was terminated from both her position as

a Graphic Design Coordinator and Adjunct Professor.

66. On or about July 31, 2023, ULM posted a job opening for a Graphic Design Coordinator

on Indeed, eventually hiring a Caucasian individual as Plaintiff's replacement. Since

Plaintiff's assignment to the Marketing and Communications Department, all African

American employees within the department have been terminated and replaced by

Caucasian employees who received a higher rate of pay.

67. Ms. Washington was subjected to racial discrimination. Ms. Washington alleges that,

through discovery based on these allegations, Plaintiff will prove Defendant did in fact

engage in intentional racial discrimination in violation of the terms and conditions of

Plaintiff's employment under Title VII of the Civil Rights Act of 1964, as amended and

42 U.S.C. § 2000e et seq.

68.

In support of her allegation of racial discrimination under 42 U.S.C. § 1981, Ms.

Washington further alleges:

69. Plaintiff is a member of a protected class, African American

70. ULM engaged in intentional racial discrimination in violation of the terms and conditions

of Plaintiff's employment because she is African American. Had Plaintiff been a

Caucasian employee, ULM would not have engaged in intentional racial discrimination

against Plaintiff.

71. On or about 2013, Plaintiff commenced employment with the Office of Marketing and Communications as a Graphic Design Coordinator. At the time of Plaintiff's hiring, there were only two other African American employees in the department: Terrance Armstard, a Photographer, and Kiwanna Sutton, a Staff Writer/Editor. On or about

72. On or about 2014, Mr. Armstard was terminated and subsequently replaced by Ms. Emerald McIntyre, a Caucasian woman. The following year, on or about 2015, Ms. Sutton was terminated and replaced by Mr. Brice Jones, a Caucasian male.

73. With the termination and replacement of Mr. Armstard and Ms. Sutton by Caucasian employees, Plaintiff observed a pattern in the Marketing and Communications Department suggesting that African American employees did not retain their positions and were systematically replaced by Caucasian employees who received a higher rate of pay.

74. On or about 2015, new management, including a Director and a Creative Director, assumed leadership over Plaintiff's department, becoming Plaintiff's direct supervisors. Despite Plaintiff's twelve years of service with ULM, Plaintiff was neither considered for promotion nor consulted regarding departmental improvements.

75. Vice President Lisa Miller informed Plaintiff that newly acquired Creative Director Srdjan Marjanovic has an abrasive personality and Plaintiff and other employees will have to navigate around it.

76. Prior to Ms. Sutton's termination she had a disagreement with Director Marjanovic. Ms. Sutton was terminated about two weeks later.

77. On or about 2016, Plaintiff requested a promotion and salary increase. The Director of

Marketing and Communications, Dr. Julia Letlow (Caucasian), denied this request, explaining that "we will never get more funding under this administration."

78. On or about 2018, Plaintiff received a call from the Recruitment Department regarding follow-up on a project that Director Marjanovic was handling. Taking initiative, Plaintiff prepared materials to support Director Marjanovic's completion of the project. However, instead of appreciating Plaintiff's assistance, Director Marjanovic berated her for "interfering" with his work.

79. Plaintiff reported this incident to Director Letlow, who called in Director Marjanovic to discuss the matter. During the meeting, Director Marjanovic confirmed that Plaintiff had "interfered" with his work and did not deny making disparaging remarks. Despite his conduct, Director Marjanovic faced no disciplinary action. Instead, Plaintiff was instructed to stop answering phone calls for the Office of Marketing and Communications, despite this being part of her job responsibilities.

80. On or about December 12, 2018, Plaintiff requested a promotion and salary increase after approximately five years in the same position. She sought a title adjustment to accurately reflect her increased experience, as well as a salary more in line with the regional average. However, her request was denied.

81. On or about 2020, Plaintiff renewed the request for a promotion and salary increase. Dr. Kelsey Bohl (Caucasian), then Director of Marketing and Communications, denied the request, indicating that a request for higher wages might prompt interim President Edwin Litolff to "start moving people around."

82. On or about 2020, Plaintiff attended a Zoom meeting with department members. Due to a malfunctioning camera on her work-issued laptop, she had to join the meeting via her

iPhone.

83. During the meeting, Director Marjanovic suddenly began yelling at Plaintiff, accusing her of making noises to annoy him. Confused, Plaintiff initially remained silent, unaware of who he was addressing. Eventually, she asked, "Who, me?" Director Marjanovic sarcastically replied, "No, my mother." Despite the presence of six other team members, Plaintiff, the only African American in the meeting, was singled out as the source of the alleged disruption. This incident left Plaintiff feeling humiliated, and Director Marjanovic faced no disciplinary action for his harassing remarks.

84. On or about 2021, Plaintiff requested for a salary increase and promotion. Plaintiff had been working with the same title for eight (8) years and wanted her career to reflect a positive progression. Creative Director Srdjan Marjanovic (Caucasian) declined to endorse Plaintiff for a raise or promotion.

85. Instead, Jeanette Robinson (Caucasian), a Social Media Specialist, was selected for a promotion and salary increase. Notably, Ms. Robinson lacked the qualifications and experience Plaintiff possessed. By that time, Plaintiff had served as a Graphic Design Coordinator for eight years and had approximately eighteen years of experience as a Graphic Designer, in addition to holding an MBA from Louisiana Tech and having completed coursework for a Master of Fine Arts from the Savannah College of Art and Design in 2008.

86. Despite ULM's repeated denial of Plaintiff's requests for promotions and raises, Plaintiff was continually assigned additional work and responsibilities without an increase in pay.

87. On or about April 2023, Plaintiff was tasked to create an email blast, with specific instructions from Director Marjanovic to include a clickable link for registration. Plaintiff

edited the email so that users could click the link to access the required registration form.

88. The next day, Plaintiff was called into Director Marjanovic's office to discuss the assignment. During the meeting, Director Marjanovic harshly criticized her work, claiming it was not completed as he intended. Plaintiff tried to explain that she had followed his instructions to make the link clickable, but Director Marjanovic accused her of intentionally causing problems and showing disrespect. Each time Plaintiff attempted to clarify, Director Marjanovic raised his voice, at one point ordering her to "Stop talking!" Visibly emotional, Plaintiff explained that she respects him and had followed his instructions to the best of her ability.

89. On or about May 8, 2023, Plaintiff was given only two choices, to resign or face termination. Plaintiff chose not to resign and was subsequently terminated by Vice President Lisa Miller (Caucasian), who informed Plaintiff that her services were no longer required as a Graphic Design Coordinator. Plaintiff was the last remaining African American employee in the Marketing and Communications Department.

90. Since 2013, Plaintiff made multiple requests for a title change and salary increase, but none were granted. Her position as Graphic Design Coordinator remained classified as a junior-level role, even though she sought a title that would accurately reflect her 20 years of experience.

91. Each time, Plaintiff's requests were denied, with ULM citing the lack of a position that matched her qualifications. Nevertheless, ULM created new positions for Caucasian employees, including the roles of Creative Director and Digital Media Manager. Upon information and belief, both Creative Director Marjanovic and Ms. Robinson received raises, despite Plaintiff previously being informed that budget constraints would prevent

any salary increases for employees.

92. Plaintiff was an employee for ULM for eighteen (18) years with only two (2) more years left before she qualified for retirement. Plaintiff was terminated from both her position as a Graphic Design Coordinator and Adjunct Professor.

93. On or about July 31, 2023, ULM posted a job opening for a Graphic Design Coordinator on Indeed, eventually hiring a Caucasian individual as Plaintiff's replacement. Since Plaintiff's assignment to the Marketing and Communications Department, all African American employees within the department have been terminated and replaced by Caucasian employees who received a higher rate of pay.

94. Ms. Washington was subjected to racial discrimination. Ms. Washington alleges that, through discovery based on these allegations, Plaintiff will prove Defendant did in fact engage in intentional racial discrimination in violation of the terms and conditions of Plaintiff's employment under 42 U.S.C. § 1981.

## CAUSES OF ACTION

### AS FOR THE FIRST CAUSE OF ACTION AGAINST DEFENDANT FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e *et seq.* (Wage Discrimination)

95.

Plaintiff states a cause of action for wage discrimination because of her protected activities against the defendant as she is protected under Title VII of Civil rights act of 1964, as amended, and 42 U.S.C. § 2000e et seq. Plaintiff repeats and re-alleges the allegations contained in paragraph 11, as if fully set forth herein.

96.

Plaintiff is a member of a protected class- African American

18

97.

Defendant's conduct violates Title VII.

98.

Defendant has engaged in intentional wage discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, subjecting Plaintiff to intentional discrimination in harassment, hostile work environment, denial for advancements, racial discrimination, and termination all in violation of the Civil Rights Act of 1964.

99.

As a result of defendant's discrimination in violation of 42 U.S.C. § 2000e et seq, the Plaintiff has been denied employment advancement opportunities providing additional compensation, thereby entitling her to injunctive and equitable monetary relief; and have suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of defendant's actions, thereby entitling her to compensatory damages

100.

In its discriminatory actions as alleged above, defendant has acted with malice or reckless indifference to the rights of the above-named African American Plaintiff, and thereby entitling her to an award of punitive damages.

101.

Plaintiff's requests for relief are set forth below.

102.

**AS FOR THE SECOND CAUSE OF ACTION AGAINST**
**DEFENDANT FOR A VIOLATION OF**
**42 U.S.C. § 1981**
**(Wage Discrimination)**

103.

Plaintiff states a cause of action for wage discrimination because of her protected

activities against the defendant as she is protected under 42 U.S.C. § 1981. Plaintiff

repeats and re-alleges the allegations contained in paragraph 26, as if fully set forth

herein.

104.

Plaintiff is a member of a protected class- African American

105.

Defendant's conduct violates 42 U.S.C. § 1981.

106.

Defendant has engaged in intentional wage discrimination in the terms and

conditions of the Plaintiff's employment, including, but not limited to, subjecting

Plaintiff to intentional discrimination in harassment, hostile work environment, denial for

advancements, racial discrimination, and termination all in violation of the 42 U.S.C. §

1981.

107.

By the conduct described above, Defendant intentionally deprived the Plaintiff of

the same rights as are enjoyed by other citizens to the creation, performance, enjoyment,

and all benefits and privileges, of their employment relationship with Defendant, in

violation of 42 U.S.C. § 1981.

20

108.

In its discriminatory actions as alleged above, defendant has acted with malice or reckless indifference to the rights of the above-named African American Plaintiff, and thereby entitling her to an award of punitive damages.

109.

Plaintiff's requests for relief are set forth below.

### AS FOR THE THIRD CAUSE OF ACTION AGAINST DEFENDANT FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 2000e *et seq.* (Racial Discrimination)

110.

Plaintiff states a cause of action for racial discrimination because of her protected activities against the defendant as she is protected under Title VII of Civil rights act of 1964, as amended and 42 U.S.C. § 2000e et seq. Plaintiff repeats and re-alleges the allegations contained in paragraph 41, as if fully set forth herein.

111.

Plaintiff is a member of a protected class- African American.

112.

Defendant has engaged in intentional racial discrimination in violation of the terms and conditions of the Plaintiff's employment, including, but not limited to, subjecting Plaintiff to intentional discrimination in harassment, hostile work environment, denial for advancements, wage discrimination, and termination all in violation of the Civil Rights Act of 1964.

113.

Defendant's conduct violates Title VII.

21

114.

As a result of defendant's discrimination in violation of 42 U.S.C. § 2000e et seq, the

Plaintiff has been denied employment advancement opportunities providing additional

compensation, thereby entitling her to injunctive and equitable monetary relief; and have

suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of

defendant's actions, thereby entitling her to compensatory damages.

115.

In its discriminatory actions as alleged above, defendant has acted with malice or

reckless indifference to the rights of the above-named African American Plaintiff, and thereby

entitling her to an award of punitive damages.

116.

Plaintiff's requests for relief are set forth below.

### AS FOR THE FOURTH CAUSE OF ACTION AGAINST DEFENDANT FOR A VIOLATION OF 42 U.S.C. § 1981 (Racial Discrimination)

117.

Plaintiff states a cause of action for racial discrimination because of her protected

activities against the defendant as she is protected under 42 U.S.C. § 1981. Plaintiff

repeats and re-alleges the allegations contained in paragraph 68, as if fully set forth

herein.

118.

Plaintiff is a member of a protected class- African American.

119.

Defendant has engaged in intentional racial discrimination in violation of the

22

terms and conditions of the Plaintiff's employment, including, but not limited to, subjecting Plaintiff to intentional discrimination in harassment, hostile work environment, denial for advancements, wage discrimination, and termination all in violation of 42 U.S.C. § 1981.

120.

Defendant's conduct violates 42 U.S.C. § 1981.

121.

By the conduct described above, Defendant intentionally deprived the Plaintiff of the same rights as are enjoyed by other citizens to the creation, performance, enjoyment, and all benefits and privileges, of their employment relationship with Defendant, in violation of 42 U.S.C. § 1981.

122.

In its discriminatory actions as alleged above, defendant has acted with malice or reckless indifference to the rights of the above-named African American Plaintiff, and thereby entitling her to an award of punitive damages.

123.

Plaintiff's requests for relief are set forth below.

## ADMINISTRATIVE PROCEDURES

1.

On or about January 19, 2024, the Plaintiff filed a timely Charge of Discrimination against The University of Louisiana At Monroe, alleging discrimination with the Equal Employment Opportunity Commission ("EEOC").  (A true and accurate copy of EEOC Charge of Discrimination # 461-2023-02731, is attached hereto as "Exhibit A")

2.

On or about August 19, 2023, the EEOC issued a "Conciliation Failure and Notice Of Rights" letter for her Charge of Discrimination. On or about August 19, 2024 Plaintiff received this letter.  (A true and accurate copy of the EEOC "Conciliation Failure and Notice of Rights" letter for EEOC Charge of Discrimination # 461-2023-02731, is attached hereto as "Exhibit B".)

3.

To remedy the violations of the rights of the Plaintiff, plaintiff requests that the Court award her the relief prayed for below.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Shanette Washington prays for the following relief:

1.

That the practices of Defendants complained of herein be determined and adjudged to be in violation of the rights of Ms. Washington under Title VII, Louisiana Revised Statute §23:631-632, and  any other cause(s) of action that can be inferred from the facts set forth herein;

2.

All damages which Ms. Washington has sustained as a result of Defendant's conduct, including back pay, front pay, liquidated damages, punitive damages, general and special damages for lost compensation and job benefits she would have received but for Defendant's unlawful and retaliatory conduct;

3.

An award to Plaintiff of pre-judgment interest at the highest available rate, from and after

the date of service of the initial complaint in this action on all owed wages from the date such

wages were earned and due;

4.

An award representing Defendant's share of FICA, FUTA, state unemployment

insurance and any other required employment taxes;

5.

Awarding Ms. Washington her costs and disbursements incurred in connection with this

action, including reasonable attorneys' fees, expert witness fees, and other costs;

6.

An award to Plaintiff of compensatory and punitive damages against Defendant,

including but not limited to damages for physical injury, emotional distress, humiliation,

embarrassment, and anguish;

7.

Post-judgment interest, as provided by law; and

8.

Such other and further legal and equitable relief as may be found appropriate and may be

deemed just or equitable.

## **JURY DEMAND**

Ms. Washington demands a trial by jury of all issues do triable in this action.

Respectfully submitted this 16th day of November 2024.

Respectfully Submitted,

**THE MINIAS LAW FIRM**

*/s/ Christopher A. Minias*
**Christopher A. Minias (#36230)**
1615 Poydras Street
Suite 900
New Orleans, LA 70112
Phone: (504) 777-7529
Fax: (504) 556-2866
Email: chris@miniaslaw.com

## SERVICE INFORMATION

Plaintiff mailed this day, November 16, 2024, by USPS certified mail Notice of Lawsuit and *Request to Waive Service of a Summons*, two copies of the *Waiver of the Service of the Summons Citation and Acceptance of Service* and a stamped self-addressed envelope to Defendant's agent.

*/s/ Christopher Minias*
CHRISTOPHER MINIAS